Good morning, and welcome to the Ninth Circuit. We have Judge Gould and I are very happy to welcome Judge Bastian from the Eastern District of Washington, who has sat with us a number of times by designation, and so we welcome him back. We have Judge Gould on the video here. Can you hear us, Judge Gould? Yes, I can hear you. Thank you. Thank you. The first case for argument is United States v. Lam. Good morning, Your Honors, and may it please the Court. Juliana DeVries for Mr. Lam, who was granted bail pending appeal and is here today. Also with me is my colleague Jody Linker. I'll reserve two minutes for rebuttal if I may. You may. This case started with a Terry stop, where Officer Magoon told Mr. Lam he was detaining him until he could figure out what was going on. The officer then did an illegal Terry frisk. It wasn't until the issue was litigated in the district court that the government took the position that this was instead a search incident to arrest. But as the district court found, this wasn't a search incident to arrest, as there was no probable cause before the search began, and the search wasn't contemporaneous with the later arrest. As an initial matter, there was no probable cause at the time of the search. There was a discrepancy between the photocopy of the I.D. card and the information from the DMV. This isn't enough for probable cause with a common name such as Henry Lee and where Officer Magoon said he had to see the card itself. Wouldn't you need to add to that the fact that the officer knew he had bought two watches worth $10,000 on two consecutive days, and also he appeared to be ready to flee as soon as he saw the police? So it's not just the fact that we have a 30-year discrepancy in the license, is it? That's true, Your Honor. But even if this court were to find probable cause at the time of the search, Mr. Lam should still prevail because the search was not contemporaneous with the arrest. But that's correct, that he bought two watches in two days, or was about to. And the officer said he was about to flee. I'm not sure that the video shows that, but Your Honors can take a look. I don't think that we credit the storekeeper's statements necessarily because I'm not sure that it is suspicious to buy two watches in two days at a watch store in Marin. But as I said, getting to contemporaneousness, Mr. Lam should prevail on that prong as well. Well, counsel, you might not be certain that it's suspicious, and I might be concerned that it's not suspicious. But we don't run jewelry stores. The people who do and who do sell high-end watches, they say in their opinion it's suspicious. And isn't that something that the police officers in making their probable cause decision and the judge in reviewing it can evaluate, that these are the experts, these are the people here every day, and they found it suspicious? Your Honor, the storekeepers are there every day. And I wouldn't say that they're experts the way that we look at police officers as experts, but they do have experience. I think it's notable that the officer here, who was on the scene and spoke to those storekeepers, said that he needed to see the cart itself to verify whether it was fraudulent. And he's telling Mr. Lam on the scene, when Mr. Lam comes back, the officer says, I'm detaining you until I can figure out what's going on. So I see that, in a way, as a credibility determination by the officer who's on the scene about what he thinks of those storekeepers' statements. But Your Honor is correct, yes. With respect to contemporaneousness, our position is that the arrest happened at approximately the 11-minute mark. That was when Mr. Lam was told that he was under arrest and was taken away to the police vehicle. Counsel, Judge Gould, if I have a question for you on this point you're arguing now. Why wouldn't he have definitely thought he wasn't free to leave once he was handcuffed and Mirandized, which is just a few minutes after, as opposed to 11 minutes? So if I understand Your Honor's question, if it's whether he was arrested at the time he was Mirandized, I would submit that he was not arrested at the time he was Mirandized because he has been already told that he's being detained, detained, not arrested, to figure out what's going on. So if we look from Mr. Lam's perspective, he thinks he's being detained. And then there's this interrogation, and about halfway through that, the officer does read the Miranda rights. But the Miranda rights have this, perhaps, talismanic quality to lawyers, but to Mr. Lam or to someone in his position, I don't think so. They don't — that doesn't tell him you're under arrest. It's not until later that he's told you're under arrest and he's taken away to the police vehicle. And under this — under this Court's case in Parr, for example, this Court said, and that's 843 F. 2nd, 1228, at page 1231, a distinction between investigatory stops and arrests may be drawn at the point of transporting the defendant to the police station. And that's where we're pinpointing the arrest here. But would you just go through — I'm a little confused by this contemporaneous argument in terms of the timeline. So it would help me if you would walk through, because we've got the detention. We put him in handcuffs. There's the Mirandis. Where in there do you claim is the contemporaneousness somehow has a break? Sure, Your Honor. So the intervening events we have here that create a break between the search and the arrest — so the government says that the arrest happened at about the 6 minute mark, and Magoon told Mr. Lamb he'd be going to jail today. So between — even if we take that, even if we take the government's position, the 6 minutes, in between the search and the arrest there, we have — we have Mr. Lamb sitting down. Officer Magoon sits him down. He's sitting there calmly. There's a lengthy interrogation. And then there's the finding of the card. And that's about at the 6 minute mark. Then after that 6 minute mark, there's the getting of the storekeeper's statements. Officer Magoon goes to the back of the store and gets statements from the storekeepers. He's looking at the couple watches that Mr. Lamb had viewed that day, and he's speaking to dispatch on this follow-up call. So those are all intervening events that we identify. We'd also submit that where, as here, the search preceded the arrest, the contemporaneousness prong must be that much more rigorous. So the search and the arrest must be essentially all one event. So how many minutes, in your view, elapsed during these events? About 11 minutes. Yeah. So allowing a pre-arrest search 6 minutes before the arrest, when the suspect has been told, or 11 minutes, 11 minutes for us, 6 minutes is just adopting the government's position, because even under their position. But where the suspect, Mr. Lamb, was told he was being detained, that would untether the search incident to arrest doctrine from its justifications, which are protecting officers and preventing the destruction of evidence. The idea behind the exception is that when the arrestee knows he's being arrested in this fraught situation, he will act in a particular way that he wouldn't act when he thinks he's being detained. So very close in time to the formal arrest, the arrestee might also know he's being arrested. So in the moments right before the arrest, like in Smith and Rawlings, we might allow a search incident to arrest under the same justifications, but not 11 or even 6 minutes before, when he's told he's being detained. Do you want to save the remaining time? Yes, Your Honor. Yes, I will do that. Thank you. Good morning, and may it please the Court. I'm Shalika Kotea, here on behalf of the United States. I'd like to take the Court to the words of the District Court. I find that there was going to be an arrest made. There was substantial evidence even before the point of any arguable arrest of guilt in this case. The District Court found that the arrest of the defendant was inevitable prior to and independent of the fruits of the search, the search of the content of the wallet. And second, the Court credited the officer's uncontroverted declaration that based on standard police practice and procedure, he would have removed and searched all physical items on the defendant's person for indicia, weapons, narcotics, or contraband prior to transporting the defendant to the Marin County Jail. What kind of contraband was he expecting to find in his wallet? Well, Your Honor, in this particular case, the officer would have been expecting to find the I.D. and stolen credit card that he had identified as a fake I.D. and a stolen credit card in his conversation with the defendant prior to any search. So is it the government's position that this search, assuming there was probable cause to arrest, this search did fit into the incident-to-arrest foundation, which is to protect those at the scene and also to preserve evidence, the evidence here being the I.D.? Yes, Your Honor. The District Court rested on inevitable discovery in denying the defendant's motion to suppress. And we ask that the Court affirm the District Court on that basis. However, we note that this Court can also affirm the District Court's position on denying the defendant's motion to suppress by finding that the search of the defendant's wallet was incident-to-his-arrest. So to answer your question, yes, it is our position that this was a proper search incident-to-arrest. One, there was probable cause for the arrest prior to and independent of the fruits of the search. Our position is that the search was roughly contemporaneous with the arrest. Where the government and the District Court disagreed, however, is whether or not this was a proper scope of a search incident-to-arrest. The District Court did state that there was probable cause for the search. In fact, the District Court's statement and this is at Excerpt of Record 34, it states, in this case, I don't think the wallet was necessary for probable cause. The District Court also went on to say, and this is Excerpt of Record 33, now, the District Court was not applying the search incident-to-arrest exception and stated this cannot be justified as a search incident-to-arrest. But he clarified that statement, and he stated, that is, obtaining the wallet may have been a valid search, but opening that wallet and looking through it was not necessary to officer safety, was not necessary to prevent the destruction or concealment of contraband. Now, this is where the government disagrees with the District Court, because the President of the United States Supreme Court and of this circuit is very clear that as part of a search incident-to-arrest, you may not only seize the items on the individual's person, but you may inspect those items. And in fact, that's the exact language in United States v. Robinson that was reiterated as recently as 2014 in Riley v. California. In United States v. Robinson, the Supreme Court looked at whether or not the officer was authorized to seize a crumpled cigarette curtain that was in the defendant's front jacket pocket, and whether or not the officer was authorized to also look and inspect inside of that cigarette curtain. And the United States Supreme Court said, having in the course of a lawful search come upon the completed package of the crumpled package of cigarettes, he was entitled to inspect it. Your Honor, it's based on this that the government submits that this was a proper search incident-to-arrest. Now, the defendant has spent some time talking about contemporaneousness. And here, they're arguing that the arrest happened 11 minutes after the challenge search. Now, the government's position before the District Court and before this Court has always been that the arrest happened at the time that the defendant was Mirandized. He walked into the store. He was handcuffed. The officer then emptied his pockets. After emptying his pockets, he double-locked those handcuffs, sat the defendant down. Then he inspected the wallet. At that moment, and within that same minute after inspecting the wallet, he Mirandized the defendant and then began to ask him certain questions. Within five minutes of Mirandizing the defendant, he states, you understand this is a felony, that you're going to jail today. Eleven minutes after the search is when the defendant was just escorted to the police vehicle. We have to look at the totality of events here. An arrest is a fluid event. And here, it's very clear that the arrest happened quickly on the heels of the search, consistent with this Court's — with the Supreme Court's precedent in Rawlings v. Kentucky. At this point, the rest of the arguments fall away, and any Fourth Amendment challenge is resolved. Seeing that there are no questions from the panel, I respectfully ask that this Court affirm the District Court and hold that the search of the defendant's wallet was appropriate as an incident to his arrest, and in any event that the contents of the wallet would have inevitably been discovered pursuant to the policy of the Marin County Police Department. Roberts. I do have one question. We've got a little bit of time, counsel. I was just deferring to my colleagues. If looking into the wallet wasn't part of the probable cause decision made by the Well, Your Honor, I think that's — this is precisely the question that the Supreme Court addressed in Robinson and that the Ninth Circuit addressed in the United States v. Pissarro, where we can't look at each case — and this, again, is also addressed in Birchfield v. North Dakota — that it has to be a bright-line rule, we can't engage in a case-by-case specific analysis when we're talking about search incident to arrest. The two questions are, was there probable cause to arrest, and was it — was the arrest roughly contemporaneous with the search? And if those two requirements are met, then the search of the defendant's person, containers on his person, and then items in his controlling area, which doesn't really apply here, can be searched. And in United States v. Robinson, I believe they dealt with that exact question. Well, once the wallet or item, the cigarette package, was in law enforcement custody, wasn't it safe from destruction such that officers should have gotten a warrant? And ultimately, the Court stated — and if you'll give me just one moment, Your Honor, and I'm quoting Riley v. California from 2014, the United States Supreme Court, where they're discussing Robinson. And the Court stated, once an officer gained control of the pack, it was unlikely that Robinson could have accessed the pack's contents. But unknown physical objects may always pose risk, no matter how slight, during the tense atmosphere of a custodial arrest. And in that regard, both in Riley, which dealt with a cell phone, but affirmed Robinson in its applicability of the search of physical objects found on a defendant's person, and in Robinson, both times the United States Supreme Court said, even when the item is in law enforcement custody, it can be searched. Thank you. Thank you, Your Honors. Thank you. Do you have some time for rebuttal? Your Honors, just to quickly address the government's position on inevitable discovery, which is an exception to the exclusionary rule that they had the burden to prove, Magoon's declaration, Officer Magoon's declaration, isn't enough to show inevitable discovery, because the inevitable discovery exception is only for routine procedures that would discover the evidence in any case. It can't be about searching for specific evidence of the crime at issue. This is a circular argument. Moreover, in Officer Magoon's declaration, which is at ER 112 to 13, he seems to actually be describing what he did here, that the illegal Terry Frisk that he did, not a routine inventory search that would be acceptable under inevitable discovery. The district court clearly erred here under inevitable discovery by failing to determine what evidence was tainted by the illegal search of Mr. Lamb's person and wallet. Moreover, the government's evidence on inevitable discovery was seriously lacked. Most glaringly, there was no evidence of what the officer would have done had he not found the I.D. card. In fact, he said he needed to see the I.D. card in his report. There was also no evidence of the jail inventory policies at the jail that Mr. Lamb would have gone to. The government also referenced that its position is that the arrest occurred when Mr. Lamb was Mirandized. I find that surprising on the government's brief on page 23, they take the position that it was at the 5-minute mark, which is actually 6 minutes on the video. And for these reasons, we ask the Court to reverse the district court. Thank you. Thank you. Thank both counsel for your argument this morning. The case of United States v. Lamb is submitted.
judges: McKeown, Gould, Bastian